## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MATTHEW WAX** : <br> 7900 Stenton Avenue : <br> Unit 03-208 : <br> Philadelphia, PA 19118 : <br> : <br> *Plaintiff* : <br> : <br> : <br> **v.** : <br> : <br> **GALERIE MICHAEL** : <br> 260 North Rodeo Drive : <br> Beverly Hills, CA 90210 : <br> : <br> *Defendants* : <br> : | Civ. Action No. 2:11-cv-06336-TON <br><br><br> <u>**JURY TRIAL DEMANDED**</u> |

### <u>FIRST AMENDED CIVIL ACTION COMPLAINT</u>

**AND NOW COMES** Plaintiff Matthew Wax ("Mr. Wax"), by and through his

undersigned counsel Bochetto & Lentz, P.C. ("B&L"), and hereby avers the following in

support of his Complaint against Defendant:

### I.   <u>JURISDICTION AND VENUE</u>

1.      Jurisdiction is proper in this district because there is complete diversity of

citizenship between Defendant and Plaintiff.  The amount in controversy exceeds the sum

of $75,000.00 exclusive of interest, fees and costs.  In addition, the pendant cause of action

under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, provides for

treble damages.  Jurisdiction is asserted pursuant to 28 U.S.C. § 1332 as there is complete

diversity of citizenship between Plaintiff and all Defendants.

2.      Venue is proper in this district as a substantial number of acts giving rise to

this claim occurred in the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391.

3.      Defendant has routinely been involved in the shipping of art to the Eastern

District of Pennsylvania, providing appraisals for art located in Pennsylvania and the

solicitation of business in Pennsylvania.  In fact, continuously and as recently as of

September of 2011, Defendant has sent targeted e-mails to Plaintiff's personal email

address specifically soliciting plaintiff's business in the district.

## II.   PARTIES

4.      Plaintiff Matthew Wax ("Mr. Wax" or "Plaintiff") is an adult individual

residing at 7900 Stenton Avenue, Unit 03-208, Philadelphia, PA 19118.  Plaintiff is a

citizen of the Commonwealth of Pennsylvania.

5.      Defendant Galerie Michael ("Galerie" or "Defendant") is a corporation in the

State of California selling, appraising and/or certifying artworks with a principal place of

business located at 260 North Rodeo Drive, Beverly Hills, CA 90210.  Upon information

and belief, Defendant is a citizen of the State of California and incorporated in the State

of California.

## III.   FACTUAL BACKGROUND

6.      This action is brought as the result of Defendant Galerie Michael having sold

what it knew or should have known to be an inauthentic lithograph by the artist Marc

Chagall to Plaintiff Matthew Wax.

7.      Plaintiff, Mr. Wax is an accomplished businessman in the Philadelphia

community.

8.      Mr. Wax has been involved in the film and television industry for over 20

years.

9.      Mr. Wax has also been an active philanthropist.  For example, he has donated

materials to his alma mater, the University of Southern California film program.

10.     Since 1984, Mr. Wax has been involved in the personal hobby of collecting

authentic fine art.

11.     In or around 1984, he began a relationship with Defendant Galerie.

12.     Defendant is a well-known art gallery located in Beverly Hills, California.

13.     Defendant hold itself out as being a repository of fine art knowledge and sharing that knowledge with its customers, including its "**market expertise**, curatorial knowledge and staff of fine art scholars." (*See* Galerie Michael's Webpage, attached hereto as Exhibit "A" (emphasis added).)

14.     Furthermore, Defendant has cultivated a national and international presence within the fine art community.

15.     Defendant "hosts tours and lectures at worldwide museums" and "creates fine art collections for exhibit on the museum circuit . . . these collections have been on exhibition in the US as well as Europe." Exhibit "A."

16.     Furthermore, Defendant markets itself as knowledgeable regarding the investment potential of the works that it sells.

17.     Defendant specifically helps fine art collectors build collections that emphasize "rarity, historic importance . . . demand, **ultimate sale-ability, [and] potential appreciation.**" Exhibit "A" (emphasis added).

18.     To that end "[a]ll collections are catalogued by the gallery's in-house curatorial department and come with a Galerie Michael Certificate of Authenticity." *Id.*

19.     Thus, overall, Defendant markets itself as a national and international gallery that specializes in providing collectors with precise knowledge as its artwork, including authenticating each artwork purchased, certifying said authentication, as well as targeting other US and European galleries for tours, lectures and exhibitions that originate from Defendant's gallery.

20.     In or around 1984, on the basis of Galerie Michael's reputation, Mr. Wax agreed to purchase artwork by Marc Chagall entitled "We live among the flowers..., *From In the Land of the Gods*" ("the Chagall") for his personal collection.

3

21.    Plaintiff entered into a contract of sale of the painting for approximately $27,000 in reliance on Gallerie's opinion that the Chagall painting was authentic.

22.    The Chagall at issue was signed and numbered, and was accompanied by a Certificate of Authenticity.

23.    Mr. Wax is not an expert in authenticating or appraising art as he collects art as a hobby.

24.    As a result of his lack of expertise, he reasonably and justifiably relied on the representations that were made by Defendant when purchasing the Chagall.

25.    At all times material, Defendant was aware the Mr. Wax was looking to purchase an authentic work by Marc Chagall for his personal collection at what he believed was the fair market price for an authentic Chagall.

26.    At all times material, Defendant was aware that any work sold to Mr. Wax that was not genuine would frustrate his purpose in buying the art.

27.    At all times material, Defendant was aware that Mr. Wax was depending on its expertise, knowledge and judgment in order to make an informed purchase of an authentic work of art by Marc Chagall.

28.    After Mr. Wax bought the Chagall, he continued to have a relationship with Defendant.

29.    Defendant continued to market its artwork and services to Mr. Wax in the following years.

30.    As a result, Mr. Wax continued to purchase other artwork from Defendant.

31.    Due to this ongoing relationship, when Mr. Wax needed an appraisal of the Chagall, he went to Defendant whom he trusted implicitly.

32.    In or about September 2009, Mr. Wax needed to have the Chagall appraised for insurance purposes. (*See* Appraisal, attached hereto as Exhibit "B.")

33.     Mr. Wax contacted Defendant for the appraisal.

34.     Defendant utilized Sara Mokhtari ("Mokhtari") as the appraiser on the Chagall.

35.     At all times material hereto, Mr. Wax justifiably relied on Defendant's representations concerning the appraisal.

36.     Ms. Mokhtari had been an appraiser at Galerie Michael for over 25 years at the time of the appraisal and had in fact been "the one person who registered [the Chagall] upon arrival at the gallery, framed [the Chagall] and did all the research for the certificates of authenticity." (*See* March 23, 2010 letter from Mokhtari attached hereto as Exhibit "C.")

37.     Furthermore Mokhtari stated that she was working at the gallery "when Mr. Wax purchased all the art . . . and even wrote up some or all of his invoices . . . [she was also] very familiar with all the art [she] appraised on Mr. Wax's appraisal and know the pieces individually, having worked on all of them as the Gallery Curator." *See* Exhibit "C."

38.     Despite Mokhtari's certification of her skill, knowledge and personal experience with the Chagall and despite her glowing appraisal of the Chagall's worth and authenticity, in or about April 2010 Mr. Wax was informed by Freeman's Auction House that they would not accept the Chagall for auction because it was not an authentic Chagall lithograph.  Freeman's is a well respected auction house. (*See* e-mail, attached hereto as Exhibit "D.")

39.     This was the first time that Plaintiff became aware that the Chagall was not authentic.

40.     Mr. Wax was "stunned" to learn that the Chagall he bought and had appraised by Defendant was, upon the inspection of a neutral third party, not authentic.

41. Despite Mokhtari and Defendant's appraisal that the Chagall was worth upwards of $75,000.00, the experts at Freeman's Auction House conveyed that, at best, it might be worth $13,000.00.

42. The authenticity of the Chagall was the basis upon which Mr. Wax depended in entering into the contract to purchase the Chagall.

43. At all times material, Defendant knew that Mr. Wax wanted to buy an authentic Chagall artwork.

44. At all times material, Defendant knew or should have know that Mr. Wax depended on its knowledge, experience and expertise in purchasing an item that was authentic, would increase in value and was thus fit for his particular uses and goals.

45. At all times material, Defendant represented that the Chagall was in fact authentic even though this turned out to be incorrect.

46. As a result of the breach, Mr. Wax has been damaged as he lost the opportunity to sell the painting (and/or exchange said painting for other artwork) as an original Chagall (if actually authentic) that would now be worth over $75,000.

## COUNT I

## (BREACH OF CONTRACT)

### Plaintiff v. Defendant

47. Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein at length.

48. Mr. Wax and Defendant entered into a contract for the sale in the approximate amount of $27,000 of an authentic Marc Chagall.

49. The basis of the bargain was that the Chagall be authentic.

50. Defendant instead sold Mr. Wax a Chagall lithograph that was not authentic.

51.     As a result of Defendant's breach, Mr. Wax sustained damages in excess of $75,000.

**WHEREFORE,** Plaintiff Matthew Wax, demands judgment in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant together with interest, costs and all other relief as the Court deems just.

## COUNT II

### (BREACH OF WARRANTY -- IMPLIED WARRANTY: FITNESS FOR PARTICULAR USE 13 Pa. C.S.A. § 2315)

#### Plaintiff v. Defendant

52.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein at length.

53.     Mr. Wax and Defendant entered into a contract for the sale of the Chagall artwork for approximately $27,000.  Had the artwork been authentic, it would now be worth over $75,000.

54.     At all times material, Defendant knew or should have known that Mr. Wax did not have the necessary skills to either authenticate or appraise the Chagall.

55.     At all times material, Defendant knew or should have known that Mr. Wax was justifiably relying on the expertise, experience and knowledge of Defendant to properly judge and select a suitable piece of art that was authentic.

56.     Thus, at all time material, Defendant knew or should have known that he was relying on the skill and judgment of Defendant in selecting suitable goods.

57.     These elements give rise to an implied warranty of fitness for a particular use.

58.     In supplying Mr. Wax with an unauthentic Chagall artwork, Defendant breached this implied warranty.

59.     As a result of this breach, Mr. Wax has been damaged in excess of $75,000.

**WHEREFORE,** Plaintiff Matthew Wax, demands judgment in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant together with interest, costs and all other relief as the Court deems just.

**COUNT III**

**(BREACH OF EXPRESS WARRANTY)**

**Plaintiff v. Defendant**

61.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein at length.

62.     Mr. Wax and Defendant entered into a contract for the sale of the Chagall for approximately $27,000.

63.     Defendant issued a Certificate of Authenticity to Mr. Wax at the time of the sale.

64.     This Certificate of Authenticity purported to guarantee that the Chagall was authentic.

65.     This Certificate of Authenticity was part of the basis of the bargain, in that Defendant expressly affirmed that the Chagall was authentic.

66.     Furthermore, Defendant made statements prior to the issuance of the Certificate of Authenticity and prior to the commencement of the transaction that the Chagall was authentic.

67.     These statements were not correct.

68.     As a result, Defendant breached its express warranty to Mr. Wax that the Chagall was authentic.

69.     As a result of that breach, Mr. Wax has been damaged.

**WHEREFORE,** Plaintiff Matthew Wax, demands judgment in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant together with interest, costs and all other relief as the Court deems just.

**COUNT IV**

**(PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW – 73 P.S. § 201.1 _et seq._)**

**Plaintiff v. Defendant**

70.   Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein at length.

71.   Mr. Wax and Defendant contracted for the sale of the Chagall.

72.   Mr. Wax bought the Chagall for personal use.

73.   By contracting with Mr. Wax in Pennsylvania, Defendant Galerie Michael became subject to Pennsylvania's law requiring fair trade practices.

74.   Under Pennsylvania's Unfair Trade Practices and Consumer Protection Law, unfair or deceptive practices include: "(ii) causing likelihood of confusion or misunderstanding as to the source . . . or certification of goods . . .; (v) representing that goods or services have . . . characteristics . . . that they do not have . . . ; (vii) representing that goods . . . are of a particular standard, quality or grade . . . if they are of another. . .; and (xxi) engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."

75.   Defendant represented to Mr. Wax that the Chagall was authentic and genuine.

76.   Defendant knew or should have known this representation was material to the transaction.

77.   Defendant knew or should have known that this representation was false.

9

78.     Defendant made this representation with the intent of inducing Mr. Wax to purchase the Chagall.

79.     Mr. Wax relied on this representation based on Defendant's reputation and general standing in the fine art community.

80.     As a result of this reliance, Mr. Wax was damaged when it became clear that the Chagall was inauthentic and not genuine.

81.     Because of Defendant's representations Defendant: a) caused a likelihood of confusion or misunderstanding as to the source and certification of the Chagall; b) represented that the Chagall had characteristics (i.e. that it was in fact genuine) that it did not have; c) represented that the Chagall was of a particular quality that it was not; and d) engaged in fraud in misrepresenting the nature and quality of the Chagall.

82.     As a result of Defendant's aforementioned conduct, Defendant has engaged in the statutorily defined unfair and deceptive trade practices.

83.     As a result of this conduct, Mr. Wax has been damaged.

**WHEREFORE,** Plaintiff Matthew Wax, demands judgment in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant together with interest, costs and all other relief as the Court deems just.  Plaintiff further demands judgment under the Unfair Trade Practices and Consumer Protection Law which calls for treble damages as well as attorney's fees.

**COUNT V**

**(NEGLIGENCE / NEGLIGENT MISREPRESENTATION)**

**Plaintiff v. Defendant**

84.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein at length.

85.    At all times material hereto, Defendant Galerie Michael voluntarily held itself out as an expert in the appraisal of fine art.

86.    At all times material hereto, Defendant Galerie Michael voluntarily held itself out as an expert in indentifying appropriate works of art specifically for each individual customer that include but are not limited to sourcing and selling **authentic** works of fine art.

87.    At all times material hereto, Defendant Galerie Michael voluntarily held itself out as an expert resource for Mr. Wax in helping him build a "museum quality collection, one work at a time."

88.    Defendant Galerie Michael owed Mr. Wax a duty as their client.

89.    Specifically, it owed Mr. Wax a duty to properly certify and appraise the artwork that is sold.

90.    Defendant Galerie Michael negligently misrepresented, and/or fraudulently concealed the authenticity of the Chagall it marketed and sold to Mr. Wax.

91.    At all times material hereto, Defendant Galerie Michael knew or should have known that the Chagall was not authentic.

92.    Defendant Galerie Michael negligently misrepresented this material fact with the intent to induce Mr. Wax to purchase it.

93.    At all times material hereto, Mr. Wax relied on the Galerie's representations regarding the authenticity of the Chagall.

94.    As a result of this reliance, Mr. Wax has been damaged.

**WHEREFORE,** Plaintiff Matthew Wax, demands judgment in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) against Defendant together with interest, costs and all other relief as the Court deems just.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand trial by a jury of twelve persons on all claims.

Respectfully submitted,

**BOCHETTO & LENTZ, P.C.**

Dated:  October 14, 2011

BY: _/s/  Vincent van Laar_
   Gavin P. Lentz, Esquire
   Vincent van Laar, Esquire
   *Attorneys for Plaintiff*

# EXHIBIT A

Artists A B C D E F G H I J K L M N O P Q R S T U V W X Y Z

# About Gallery

Galerie Michael is a unique fine art gallery located on the famous Rodeo Drive in Beverly Hills for over thirty years. The gallery's model is built on posterity rather than prosperity, which means a long term view on working with collectors in "building museum quality collections, one work at a time". The model has created an unparalleled client base of close to 7,500 collectors, many of whom have been collecting with Galerie Michael for thirty years.

An important aspect of Galerie Michael's ongoing success is that customers are treated as business partners with full access to Galerie Michael's planning, market expertise, curatorial knowledge, and staff of fine art scholars. Collections built focus on artwork in the upper 25% of the artists' oeuvre, emphasizing rarity, historic importance, ground-breaking innovations, demand, ultimate sale-ability, potential appreciation and artistic insight. All collections are catalogued by the gallery's in-house curatorial department and come with a Galerie Michael Certificate of Authenticity.

The gallery is known internationally for its leading edge in 17th to 20th Century master works, mounting over eighteen annual exhibitions, including *Barbizon and the Journey to Impressionism, Picasso and the Artist's Muse, Rembrandt: A Comparative View* and *Renoir and the Impressionists*. Exhibits are accompanied by catalogues with essays written by scholars and critics who support the gallery's philosophy of acquiring fine art through ongoing education.

The Gallery hosts tours and lectures at worldwide museums as well as in Los Angeles. Gallery staff and clients have taken tours to the town of Barbizon, the birth place of Plein-Aire painting, and given lectures at the Musée de l'École de Barbizon in France. Closer to home, the gallery has arranged and conducted tours and lectures at LACMA, The J. Paul Getty Museum and The Norton Simon Museum.

Galerie Michael creates fine art collections for exhibit on the museum circuit. Through scholarly catalogues and museum affiliations, these collections have been on exhibition in the US as well as Europe. Importantly, they follow a formula that increases the value of the collection as a whole; creates prestige for the owners of the collection and brings historic insights to the public. These collections create a revenue stream and fine art exposure for the museums and the gallery benefits by international branding associated with the collections.

Galerie Michael's long-term commitment to collector ethics, access to fine art, education and art collecting along with it's prestigious membership in the Fine Art Dealers Association (FADA), it has established itself as one of the most highly regarded, successful galleries in the United States and worldwide.

## Michael Schwartz – CEO and Owner



Galerie Michael is a unique fine art gallery located on the famous Rodeo Drive in Beverly Hills for over thirty years. The gallery's model is built on posterity rather than prosperity, which means a long term view on working with collectors in "building museum quality collections, one work at a time". The model has created an unparalleled client base of close to 7,500 collectors, many of whom have been collecting with Galerie Michael for thirty years.

An important aspect of Galerie Michael's ongoing success is that customers are treated as business partners with full access to Galerie Michael's planning, market expertise, curatorial knowledge, and staff of fine art scholars. Collections built focus on artwork in the upper 25% of the artists' oeuvre, emphasizing rarity, historic importance, ground-breaking innovations, demand, ultimate sale-ability, potential appreciation and artistic insight. All collections are catalogued by the gallery's in-house curatorial department and come with a Galerie Michael Certificate of Authenticity.

The gallery is known internationally for its leading edge in 17th to 20th Century master works, mounting over eighteen annual exhibitions, including *Barbizon and the Journey to Impressionism, Picasso and the Artist's Muse, Rembrandt: A Comparative View* and *Renoir and the Impressionists*. Exhibits are accompanied by catalogues with essays written by scholars and critics who support the gallery's philosophy of acquiring fine art through ongoing education.

The Gallery hosts tours and lectures at worldwide museums as well as in Los Angeles. Gallery staff and clients have taken tours to the town of Barbizon, the birth place of Plein-Aire painting, and given lectures at the Musée de l'École de Barbizon in France. Closer to home, the gallery has arranged and conducted tours and lectures at LACMA, The J. Paul Getty Museum and The Norton Simon Museum.

Galerie Michael creates fine art collections for exhibit on the museum circuit. Through scholarly catalogues and museum affiliations, these collections have been on exhibition in the US as well as Europe. Importantly, they follow a formula that increases the value of the collection as a whole; creates prestige for the owners of the collection and brings historic insights to the public. These collections create a revenue stream and fine art exposure for the museums and the gallery benefits by international branding associated with the collections.

Galerie Michael's long-term commitment to collector ethics, access to fine art, education and art collecting along with it's prestigious membership in the Fine Art Dealers Association (FADA), it has established itself as one of the most highly regarded, successful galleries in the United States and worldwide.

## Services

- Certification of Authenticity
- Complementary certified appraisals for insurance, estate, donation or tax purposes
- Curatorial research
- Complete painting and paper conservation
- Custom museum quality framing
- Professional packaging and world-wide shipping
- Two year exchange privilege on works purchased from the gallery
- Artwork presented is owned by the gallery
- Personal art consultant to advise and assist clients with acquisitions
- Building museum quality collections
- Access to a million dollar art library
- Saturday VIP lectures by world renowned art historians and critics
- Search worldwide to find specific works
- Intimate relationships with Master Artists Families

- Intimate relationships with Master Artists Families
- Over 65 Years of art experience and knowledge
- Respected International fine art gallery with worldwide references
- Museum curated traveling exhibitions worldwide
- Members of the Fine Art Dealers Association
- Located on the famous Rodeo Drive in Beverly Hills for over 30 years
- VIP entrance and private viewings
- 2 hr Complementary parking

## Relationships with Master Artist Families

Galerie Michael has built and established long term relationships with the families of the impressionist masters, Renoir, Cézanne and Pissarro. Along with members of the Picasso family and their representatives, the Mourlot family and Picasso expert Brigitte Baer. The gallery has established strong relationships with the printers of the Modern Masters, Picasso, Chagall and Miró.

Renowned scholars such as Gary Schwartz, Rembrandt author and authority, Dr. Petra Chu, Gabriel Weisberg, , and Alexandra Murphy, leading 19th century *Plien Aire* authors and scholars have published and lectured throughout the years. Contributing to the Galerie Michael commitment to inform and educate clients in the history and acquisition of fine art.

Currently, Galerie Michael exclusively represents and exhibits the works of Alexandre Renoir, Great Grandson of Impressionist Pierre Auguste Renoir.

# EXHIBIT B



# GALERIE MICHAEL

## Appraisal

September 3, 2009

THIS IS TO CERTIFY that I, Sara Mokhtari, of the firm Galerie Michael, located at 430 North Rodeo Drive, Beverly Hills, CA. 90210, have carefully examined said articles of personal property at the request of:

Matthew Wax
MSTVN.net, LLC
Two Bala Plaza, 3rd Floor
Bala Cynwyd, PA. 19004

This Certificate of Appraisal is given subject to the terms, conditions and methods set forth below:

**Purpose of appraisal:** Retail Replacement Value for Insurance

**Type of valuation used:** Retail Replacement Value, as defined by the Appraisers Association of America, is the cost necessary to generally replace at the highest current level of retail prices, with comparable works of art of like kind, quality, and similar utility as the item being appraised. This definition assumes that the work of art being appraised cannot be substituted with an exact duplicate, and indicates the buyer's desire not to "shop" for best price. Value, as defined by the Uniform Standards of Professional Appraisal Practice, expresses an economic concept. As such, it is never a fact but always an opinion of the worth of the object at a given time. These prices might need to be adjusted higher according to availability and pricing at the time of replacement purchase.

**Qualifications:** My area of expertise includes European paintings, drawings and prints from the 17th Century to the present.

**Inspection:** The articles listed in this appraisal report have been examined by physical inspection. Unless otherwise noted, the article(s) was found to be in good and reasonable condition at the time of viewing.

**Authenticity:** It is my belief that the article(s) listed are authentic and that the appraised objects correspond to the descriptions in the appraisal report.

**Description:** A complete description of the appraised article(s) including artist, medium, measurements and, where applicable, edition, biography, provenance, exhibition and publication history are noted on attached pages.

**Statement:** I hereby certify that employment to make this appraisal and compensation for it are not contingent on the valuation found. All aspects of this appraisal report are confidential. I certify that, to the best of my knowledge and belief, the statements contained in this report are true and correct. The analysis, opinions and conclusions were developed, and this report has been prepared in conformity with the Uniform Standards of Professional Appraisal Practice and the Appraisers Association of America.

Sara Mokhtari, Associate member
Appraiser's Association of America

430 NORTH RODEO DRIVE • BEVERLY HILLS • CALIFORNIA 90210
TELEPHONE 310 273-3377 • FAX: 310 273-3452 • EMAIL: art@galeriemichael.com
WEBSITE: www.galeriemichael.com

September 3, 2009

Wax
Appraisal Report
Page 2 of 2

RENOIR, Pierre-Auguste (French, 1841-1919)
"Les Baigneuses/Le Jugement de Paris"
Lithograph on paper, only state
Stella 51
14 ¼ x 23 ½ inches

Gallery Retail Value: $14,000.00

RENOIR, Pierre-Auguste (French, 1841-1919)
"L'Enfant au Biscuit (Jean Renoir), c. 1898-1899
Color lithograph with all eight colors, only state
Signed "Renoir" lower left margin on stone
A rare impression, with the blue eyes
Stella 31
12 ½ x 10 5/8 inches

Gallery Retail Value: $98,000.00

CHAGALL, Marc (Russian/French, 1887-1985)
"In the Land of the Gods:  We live among the Flowers...", 1967
Color lithograph, signed in pencil by the artist and numbered
Mourlot 531
25 ½ x 19 ¾ inches

Gallery Retail Value: $75,000.00

CHAGALL, Marc (Russian/French, 1887-1985)
"Thee Green River", 1974
Color lithograph on paper, signed in pencil and numbered
Mourlot 728
11 x 21 ½ inches

Gallery Retail Value: $35,000.00

CHAGALL, Marc (Russian/French, 1887-1985)
"The Rose Bouquet", 1980
Color lithograph on paper, signed in pencil and numbered
Mourlot 979
37 x 23 ¼ inches

Gallery Retail Value: $45,000.00

Initials

# EXHIBIT C



# GALERIE MICHAEL

March 23, 2010

Re: Art Appraisal report for Mr. Matthew Wax – dated Sept. 3, 2009

To Whom It May Concern:

This is to certify that I, Sara Mokhtari, have been an employee of Galerie Michael for over 25 years now. I have examined the art mentioned in Mr. Wax's appraisal – being the one person who registered the art upon arrival at the gallery, framed the art and did all the research for the certificates of authenticity.

I was here when Mr. Wax purchased all the art from Galerie Michael and even wrote up some or all of his invoices. I'm very familiar with all the art I've appraised on Mr. Wax's appraisal and know the pieces individually, having worked on all of them as the Gallery Curator.

Thank you very much.

Sincerely,

Sara Mokhtari,
Senior Curator, Galerie Michael

260 NORTH RODEO DRIVE, BEVERLY HILLS, CALIFORNIA 90210

TELEPHONE: 310.273.3377 • FAX: 310.273.3452 • EMAIL: art@galeriemichael.com

WEBSITE: www.galeriemichael.com

# EXHIBIT D

Fw: Note from Matthew Wax - Yahoo! Mail                                    Page 1 of 2

# YAHOO!, SMALL BUSINESS

**Fw: Note from Matthew Wax**                              Wednesday, April 21, 2010 6:33 PM

From: "Matthew C Wax" <matthew.wax@mstvn.net>
  To: ahenry@freemansauction.com

I apologize I forget the "s" in Freemans in your email address

Matthew C Wax
Chief Executive Officer
MSTVN.net, LLC

matthew.wax@mstvn.net

--- On Wed, 4/21/10, Matthew C Wax <*matthew.wax@mstvn.net*> wrote:

> From: Matthew C Wax <matthew.wax@mstvn.net>
> Subject: Note from Matthew Wax
> To: ahenry@freemanauction.com
> Date: Wednesday, April 21, 2010, 6:30 PM

Ms. Henry:

I want to take this opportunity to thank you for your time, assistance, and to confirm our conversations.

The Chagall in question you advised me, upon inspection, "is not a lithograph," questioned its authenticity, and accordingly advised it was nothing you would accept for auction.

You originally told me you would send me a letter to that effect, however after checking, learned it was against Freeman's policy. Ms. Mendez told me, had you accepted it, it would bring $12-13,000 at auction.

The Renoir lithograph you did not examine. Ms. Mendez advised I could have expected to receive approximately $2,500 at auction. Had you accepted this piece, I must believe you are of the same opinion.

I have yet to hear from your transporters. I am having company on Sunday, do not have time to go to my warehouse to pick up two replacement pieces and am therefore anxious I have heard nothing. It would be a tremendous courtesy if you would have your aide address this matter, without further delay. I would pick them up but have recently undergone carpel tunnel surgery and could them get them here even if you loaded them there.

Again I thank you for taking the time to consider these pieces for inclusion in you next contemporary art auction. I am sorry they did not meet your standards. I thought I had purchased them from a top gallery with a tremendous reputation.

I will start attending your auctions. So, if nothing else, you have developed a relationship with a potential new client.

All the best,

Matthew C Wax
Chief Executive Officer
MSTVN.net, LLC
Direct Dial: (267) 325.3766

matthew.wax@mstvn.net